13 40 59 13 43 54 KBC Asset Management NV versus Eaton Corporation at all oral argument as follows 15 minutes for the plaintiffs 15 minutes to be shared by the defendants mr. McNeelya for the may please the court my name is Andrew McNeelya I'm with the law firm of Kirby McInerney we represent the plaintiff appellant KBC Asset Management with the court's permission I respectfully request that five minutes of my time be reserved for rebuttal the primary issue on appeal is straightforward is a company liable under the securities laws for falsely denying that it had engaged in litigation misconduct in state court when the state court conducted a thorough investigation and determined that the company was a knowing participant in the misconduct and when the company stock value dropped immediately after the company finally admitted its wrongdoing under law of the circuit the answer is yes as such a district courts determination that the plaintiff had failed to plead the scienter and loss causation elements is erroneous and respectfully should be reversed now turning first to the issue of scienter plaintiffs at a minimum have established a scienter of the corporate defendant Eaton as well as the individual defendants Cutler and Leo with respect to Eaton a strong inference of scienter arises here from the fact that the frisbee court made findings factual findings and determined that Eaton had been involved in both the litigation misconduct as well as a subsequent cover-up and also based on Eaton suspiciously timed terminations of their in-house counsel now first is detailed in KBC's complaints the frisbee court conducted a thorough investigation into the litigation misconduct which included attempts to influence the trial judge and made the following finding and I quote the bottom line is both Eaton and its counsel participated nonetheless the district court gave literally zero credence to that finding simply because Eaton had appealed that decision but KBC's burden here was not to prove scienter its burden here was just to plead scienter and regardless of whether Eaton appealed that decision the frisbee courts detailed findings support a strong inference of scienter the scienter relates to statements made by Eaton is that right is that what we're asking about when they made certain statements they knew they were wrong is that the idea correct your honor that what are the key statements that we're talking about the key statements were made I think beginning in 2009 of August where the August they said we didn't ask Peters to insinuate that he would do anything something like that correct and they also went on to say that we'd also there was nothing improper about paying the former frisbee employee who sort of was a whistleblower for his testimony that they hadn't done anything improper with respect to certain these are statement the statements as to which you say there is scienter are statements that that they didn't do corrupt kinds of things with respect to this other litigation that's correct like asking Peters to get involved with Judge DeLauder and so forth and that's incorrectly that's well there was it was more than just the improper ex parte communications and an attempt to influence a trial judge there was also efforts to withhold asking about what happened I'm asking about what was said that was wrong oh my apologies yes this statement trying to get at what the statements are to which scienter might apply right and they mostly relate to they were going on with respect to the previous litigation is that am I focusing on what the theory of your case is that's correct your honor that they made affirmative statements as to whether or not they had engaged in certain types of misconduct at the misconduct being hiring someone to influence the judge and so forth that's part of it certainly what's the other part of it well sorry to go a bit further these statements were made in a public setting like a press conference after the Frisbee litigation and your further theory is that that had an effect false statements that had an effect on the stock price of Eaton that hurt your clients right that's the theory that's correct your honor is that you have a company that's accused of fairly egregious misconduct this is not the type of thing that happens every day they come out affirmatively and just don't say you know we intend to defend ourselves I come out and say we didn't engage wanted it wants to know what the statements are sure and again I to start well I'm looking at a summary of them that says there's a statement in August of 2009 and another statement in September of 2009 and another in December of 2009 which basically say we didn't do anything wrong those are the kinds those are the statements that you're talking about as to which scienter applies according to your theory yes there were also statements in I believe January of 2011 which was after the decision so the Frisbee court but when is the when is the the the period the time period goes I believe from the starting point was August 2000 when is the when is the class period right there the class period I believe your honor goes from August 2009 through I believe it's the beginning the very beginning of June of 2012 right and during that's that period of time that's the that's the period that June of 12 that's correct your honor and what you have is starting the commencement of the class period was when they made certain misstatements because mr. Peters was going to testify as to what he would have said before or there was a statement as to what he would have said before the grand jury regarding his contacts with judge de lauder then you have again the subsequent statements you had mentioned then there was a decision issued by the Frisbee court and I thereafter in January 2011 Eaton continued to deny that it did anything wrong with respect to both the documents that withheld and it's improper contacts with judge de lauder and then ultimately as the court investigated and again it became apparent to the to the trial court here that there was some serious misconduct going on it had ordered the most of the individual defendants in this case to submit affidavits under penalty of perjury now saying hey that's the end of it the day that the affidavits are are admitted and then the the the injury or the the stock drop that caused immediately after these affidavits after June 12 no immediately after May 31st it goes May 31st and I believe it's through last periods somehow on my notes I think it's June 4th right it's June 4th is when is when the last day that the stock drop was I believe was made around a you look to the next trading day you had Friday and didn't those affidavits here's my question it goes to loss causation didn't the affidavits deal with with discovery the app it still was rather than with the thrust of the of the statements as to which you've identified which as to which you're saying there was C enter well no your honor it the affidavits addressed a broad spectrum of misconduct which is also what we allege was false here you there was a scheme but in the affidavits specifically admitted to misconduct in the nature of asking Peters to insinuate that he would do something improper hiring Peters to influence de lauder or asking him to influence judge de lauder those are the statements as to which C enter arguably applies what is there in the affidavits which would cause a stock a shareholder to think oh even though I didn't think that happened before now I think that happened I understand your honors question just take me a moment of navigation to get there because I want to make sure that we're not artificially compartmentalizing what went on you had discovery violations you had the ex parte communications then you had the cover-up of both and during the course of the investigation right the court below got frustrated with it well the trial court got frustrated with the fact that documents pertaining to both the wrongful discovery violations as well as the ex parte communications were being wrongfully withheld even denied everything you know part and parcel right throughout the class period the declarations themselves focused on discovery violations but part of those discovery violations were the failure to turn over certain incriminating documents relating to the Peters de lauder relationship two documents in particular that the court the trial court said hey as part of these affidavits I want you to explain why these two documents which by the way pretty much show what was going on weren't turned over even though there were numerous orders in the past directing you to do so the important thing to me is that two years earlier before the stock broke declined precipitously as you say two years earlier the court a court the court in Mississippi dismissed the case and find eaten so doesn't the market know then that already knew two years earlier before these affidavits hit the hit the market hit the news the court the market already knew about the problems the market knew about certain aspects of the problems and again we're talking huge fine it is a dismissal of the frisbee case sure I think it was well that is a significant sanction for significant misconduct but that's not where it ended what you had subsequent to that disclosure and I agree that of course is a disclosure of some of one on is that you have a continued campaign of denials by the company and I think what we're talking about is sort of an interplay between both causation materiality and where you have a company that's been fined continuing to say though we did absolutely nothing wrong here nothing went on and then finally finally when push comes to shove and the trial court says no now you have to you have to under penalty of perjury submit these affidavits and they finally come forward after two years of denying everything and say you know what some serious lapses really did happen here serious lapses that they say really did happen were serious lapses in discovery not serious lapses in or I'm asking but it appears to me and I'm wondering what your response is looks like what they finally admit to that they've been denying at that point in time when you're saying the stock went down our lapses in providing discovery not lapses in in what you did when you allegedly asked Peters to influence the lotter are you with me that's the problem I completely understand what you're saying and I did my best I believe to answer it a minute or two ago let me try it again or is the discovery relates to these facts but I'm not sure that's something that the that the that the shareholder is gonna track well I will tell you if we're talking about materiality now now we're talking about an issue and the law is clear that that's no I'm talking about loss causation okay so when you have a company there's other things that arguably caused the loss you know and they say you know it's not so in order for for the complaint plausibly to say that the loss was caused you have to have something which plausibly suggests that right when other things might possibly suggest it right like these merger or whatever it was that also was going on at that time sure right to answer your honors question as specifically to discovery violations pertaining to the emails that demonstrated among other things the improper Peters to water context so they they basically admitting that they wrongfully withheld that then to answer your honors question you have the affidavits come out there is an immediate drop in the stock price the only other possible cause and again on a motion to dismiss it is not a plaintiff's job to try to disaggregate other possible causes that is the province of complex expert testimony but putting that aside what you have is the announcement of a merger 10 days earlier right the defendants are essentially claiming that it took the efficient market 10 days to absorb the information of that merger and that's the real cause not the release of these affidavits a day before and I will tell you if a plaintiff's attorney tried coming in and tried to establish causation with a 10-day gap they'd be laughed out of court because there are innumerable cases saying that's far too much time because it does not take the efficient market that long to do so okay thank you thank you your honor morning your eyes my name is Francis Floriano Gowans I am here representing all of the defendants except for mr. Leo and I would request that two minutes of argument be reserved for mr. Leo mr. Leo's counsel your honors this is this complaint does not state a securities fraud claim at most the consolidated amended complaint alleges litigation mismanagement appellant asserts an evolving theory here but like the district court I would urge this court to look at the allegations in the actual and I believe you will agree with the district court that the complaint itself is deficient in a number of respects as the district court found appellant has failed to allege the critical elements of its claims under section 10 B including see enter and loss causation this court of course reviews those findings de novo but I would point out that the overarching theory here is highly implausible appellant is asserting their reports about litigation which they admit at paragraph 14 of their consolidated amended complaint had never been monitored monetized by Eaton or by the market caused an alleged 1.4 billion dollar stock decline after in in a month in which there were a number of other announcements and I'll get to that in a minute every case that has found loss causation based on these types of allegations there has been some sort of link alleged between the statements and the and and the actual stock price or the company's finances the company's financial reports there have been either restatements of financials there have been in the case of the Hill versus State Street what about pure hypothetical situation company says we've been saying until now that we haven't engaged in fraud but we did not this case but in a typical case just to test your thesis you now say actually we've been engaged in fraud for the last year or two your honor I would say wouldn't and then the stock goes down wouldn't wouldn't that be enough to possibly to allege that that that previous statements that there was no fraud actually led the market or you're saying even in that pure situation it wouldn't be enough I don't believe it's enough under the more current cases which require that there be actual and I direct the court to Dura pharmaceuticals and the D and J case from this court you're saying the law is in that case that's not enough to show that's not enough that boilerplate and conclusory allegations because shareholders are just as happy holding shares of fraud feesers as long as because your honor there could be as I would be I'd be hesitant to hold a share of a fraud feeser of an admitted alleged fraud feeser or probably every share I own is is is that but admitted fraud feesers that's that's something you might hesitate to buy isn't this case did it does not know this case is different I'm just trying to get at the theory you seem to be saying that could never be enough to prove loss causation your honor the cases say that there have to be specific or not specific but enough allegations in the complaint to raise a plausible connection I'm just asking why wouldn't that be plausible in that situation if a company came out and said yes we committed fraud yes we hired in this case Peters to influence Judge Delauder and we knew what he was doing the whole time that is not this case your honor I know it's simply not understand that that's why I said it was a hypothetical and not this case to test your theory but doesn't really answer my question if you just say that's not this case it's just like saying judge I'm not going to answer your honor I don't think the court should be looking at hypotheticals that don't involve the facts of this case what we have here is forgo your chance to I think I'm trying to answer it your honor and I apologize if the allegations of this complaint alleged with C enter that the company knew that they hired Jones to influence Delauder that they didn't play ball in discovery and if they came out later and said knowingly that they did do that and those statements allegedly led to a stock drop that's a valid theory under ERISA right and the private litigation I forget the security yeah right LRA yes if the company said we have we admit that we made false statements we admit that those statements were baked into the price of our stock we admit that those statements influenced the stock price and it artificially inflated the stock price to begin with because that's a piece of the loss causation puzzle and then admitted yes we we were lying we were false yes your honor I agree that would probably state loss causation but there are a number of additional steps or admissions in court you're talking about I thought judge Murphy was asking you about questions questions about admitting certain kinds of bad action causing the stock to go down simpliciter it's the it's the connection between admitting bad actions and causing the stock to go down that I'm having trouble with your honor and I think that is exactly what the district court judge had trouble with there is nothing in the complaint that makes any plausible connection between those two and in fact if you look at the actual affidavits so then your stronger argument is that not not that there's a lack of scienter about what Eaton did because Eaton fully knew what it was doing but more because what Eaton did can't be plausibly alleged to have had anything to do with the drop in the price of the stock your honor I think both of those are very strong arguments I think the district court was right on both reasons I know that you know you of course you do but which is the stronger certainly the loss causation seems much stronger to me based on what you're telling us if you look at the affidavits and I was just going to get to this what the what the individuals actually say what the defendants actually say in their affidavits is I didn't know about this before I only knew about it in May of 2012 this is the first time hearing that we didn't produce documents we should have produced back in 2008 that's what they say in the affidavits that to me totally negates scienter even if the complaint had pled a letter at scienter which it doesn't it doesn't plead anything specific about these individual defendants it doesn't explain how any of these individual defendants or through any individual defendant Eaton or through anybody else Eaton the company had knowledge of any of this stuff or could have been reckless because there is nothing in the that's been done on the part of appellant there's nothing in the complaint itself that alleges the elements of scienter and and I would posit your honor that the complaint you know tell abs is this court recognized very recently in the kayak decision requires at least that the that the allegations of scienter be at least as compelling as competing inferences and the competing inference that we have advanced here in which we continue Eaton continues to believe is true is that it simply does not agree with the Mississippi court it simply did not do these things and and if you look at the timeline your honors there was statements are that the statements are no way did we ask at Peters to ask or insinuate that he would do anything improper in trying to influence judge the water you're just saying that's that's true that is the company's position continues to be the company's position to this day and I understand and that but but all they have to do is plausibly plausibly allege that that was not true and known not to be true and that they've at least plausibly alleged that no matter what your current position is they've stated it's all these courts have said that's exactly what happened and they knew it your honor the courts actually before the class period we have the special master in the Mississippi case saying Eaton engaged Peters to influence the water so into that if if your client said the contrary maybe your client is right but a reasonable juror could come to the conclusion that your client was not correct since this other body explicitly so found your honor I don't believe I don't believe that a court finding you know well while it is conclusive for litigation purposes even raises a plausible theory your honor there are there are inmates on death row continue to say that they were not guilty of the crime and Eaton continues to believe it was not guilty and there is there are not plausible allegations in the complaint the allegations say that they're not guilty but these people who are on death row there's at least a plausible argument that they did it a court presumably has found that they did it an appellate court has presumably agreed with them you know we have the exact same situation as we have here there are no facts you don't you don't want you don't want Eaton in the same position as the merits of Frisbee are old news however with regard to see enter judge Yeager wrote in 2010 quote Eaton and its counsel knew the serious improprieties occurring on its behalf between Peters and the water and stood by with blind eyes close quote nevertheless later in in affidavits and and to this day at no time did we hire Peters to influence the water in any way so it seems to me that yes or no up or down anyway you slice it Eaton knows it's making statements that contradict in a significant way of finding a fraud by judge Yeager the question I have is what and whether and I believe judge Rogers examined your colleague at length on the issue what what theory is stated at this highly preliminary stage and allegation in the complaint that that caused the stock stock price to drop there is no theory stated in the complaint that that it caused the stock price and in plausible allegation in the complaint that the stock dropped as a result stock price dropped as a result any of these statements and behaviors that what that's what you're saying your honor yes but that's based on a complete misreading of the affidavits is some kind of corrective disclosure as the court has already pointed out there was no corrective disclosure Eaton never admitted that it in fact defrauded the court in Mississippi and hired his argument in response to that as I understand it is it disclosed some things about disclosure where the things being cases a corrective disclosure has to go to the alleged misrepresentation the misrepresentations uniformly here were Eaton did not hire Peters influence judge de lauder and if Peters was doing that we didn't know about it those were the alleged misrepresentations the affidavits say something totally different they say our discovery process was not sufficient and we should have documents in 2008 that we're just finding in April of 2012 and and you know we're sorry about that and it shouldn't have happened and we're just finding out about this that's what the affidavits say that is not a corrective disclosure and in fact your honor if you're not going to consider the Cooper deal as influencing the stock prices the plaintiff is trying to say it should not be the court should also look at paragraphs sorry your honor any further questions no thank you thank you your eyes hey please the court good morning my name is Daryl clay represent the Apple II Victor Leo the district court's decision with respect to mr. Leo was properly affirmed for reasons set forth in our brief mr. Leo there's no allegation that he made a material misrepresentation that he see enter as pledged to him that there was lost causation established as to mr. Leo and that he was properly alleged to did he make this separate arguments below he joined in all of the briefs that Eden did he make these separate arguments below by joining in Eaton's briefs the emotion by joining these briefs to Deaton's briefs then contain a separate argument that you weren't involved in this particular they did not contain a separate analysis with respect to discreetly mr. Leo or any of the images what you're making now right so you're making an argument essentially not raised below in order to as an alternative argument for affirmance with respect to your particular client respectfully judge Rogers I would disagree that these are new arguments it's the application of the same arguments to a single individual defendant there's nothing new each of district court in its opinion and all we did was provide a discreet analysis as to our standalone client thank you thank you your honor just want to address the issue of causation and I think there's a some preconceived misconceptions as to what a plaintiff needs to plead to establish causation unlike see enter which is you know there's a higher pleading requirement other the PSL array and the who what's where's and when's a fraud which are subject to rule nines hiding pleading standard causation is subject to rule 8 and rule 8 just requires a short plain statement to put the defendant on notice of what the theory of causation is here now they factually dispute the theory of causation and that's fine but that's not appropriate at the pleading stage what the of course it under rule 8 it has to be plausible and what we've alleged here is that there was the very first time at the company admitted it engaged in wrongdoing that wrongdoing included its grand scheme of withholding information during the course of the litigation and some of that information in fact key information that the trial court said let us know why you withheld this let us know if this is all you have or the two most incriminating documents with respect to the Peters the company comes forward and you know they want to deny that they made any admissions I hate to interrupt because our time is short but I read language from judge Yeager's order to miss going and it seems to me that places KBC on the horns of a dilemma the to me the writings of judge Yeager in the subsequent behavior of the company give credence to the plausibility of your claims in the C enter and knowledge of the company but once he did that didn't he also advise the public well in advance of the May 2010 affidavits that you claim caused the loss no your honor because the complete story was now sure enough the opinions of the trial court did give some of the information to the public but they were met with again a campaign of we disagree with everything that said we did nothing wrong again these are affirmative statements that whatever the trial judge said throw that out the window don't pay attention to what's going on there because that's just baloney right and what we learn after after a year and a half of that is well geez and to quote from one of the affidavits which are said to not you know have any mister admissions in them of the general counsel mr. McGuire in paragraph 21 of his affidavit he acknowledges that there were very serious lapses that happened could I sort of a background question that I meant to ask when the first time you were up yes sir which is let's think about a plausible theory for why a shareholder would sell or deem the stock to be worth whatever it is less all right if it had been and so the shareholder is thinking well I could understand if the shareholder thought here's some litigation that I thought Eaton had a pretty good chance of winning which would have brought them tons of money which would have caused the cost of value to go up and so that would that's a share I want to hold as opposed to all of a sudden finding out that this litigation is going south and they're not going to get all of this money that would be one theory which would be plausible but doesn't quite fit here because the litigation had pretty clearly gone south prior to this so if it's not that then what is the reasonable shareholder worried about when it just turns out that somebody for the something let's say corrupt I'm not saying it was but in a hypothetical situation they say well here I have shares in this stock some of the people did something bad they might have to go to jail or they might have to pay sanctions but the sanctions are pretty small compared to the total value of the company so you know I might I might not buy more but I'm I'm not gonna see what I'm saying I'm not gonna devalue the company in my mind just on something like that so what's the possibility of shareholder caring enough to cost the shares to go that far down when it assuming it doesn't have to do with whether they're gonna win this huge lawsuit which has already been lost pretty much are you with me absolutely your honor answer well the answer is this is a corporate integrity matters the the ethics and integrity of the people who run a publicly traded currently a public integrity kind of and there were cases here on that that say when you have corrupt and and to give also just an example of how the the dollar value of the fraudulent conduct at issue does not necessarily translate to the impact that the misstatements have with respect to a company I mean take for example what the theory does though it turns every instance where somebody in a corporation lies even if he says you know I went to Florida when I really went to New York to visit my mistress you know that that's gonna turn into the fact that he lied and then later admitted it is and if the shares happen to go down you're gonna have a have a have a securities claim and you say yeah let's litigate it well as a matter of pleading perhaps of course you have the opportunity to always that's a matter of pleading you get it's you also have materiality as an element and quite frankly the idea that someone said he went to Florida for whatever purpose it may have been and it turns out not to be the case is a far different issue of materiality than a company engaging in egregious and repeated litigate I'm not talking again I'm not I'm talking about the plausibility of loss loss causation not so much materiality well I understand there's a materiality argument as well but in terms of plausibility of loss causation just seems hard to imagine that that would have caused whatever loss occurred when he announces that he actually went for the wrong reason and he's a corrupt guy well your honor but you're saying yeah no absolutely and again you know part of it is you show an immediate drop in all the cases say this that where you have the disclosure of new material information right and there is a stock movement again that is sufficient at the pleading stage under rule 8 to show that there is a causal connection between the two because again I mean I don't mean to make it sound more important than it is but the issue of cases is incredibly complex that's why both sides go out and pay lots of money to econometrics to do their regressions analyses to say oh no in fact it was this announcement 10 days earlier even though you know the ratings agencies incorporated that news and downgraded the company the very next day which is exactly what happened here or put it on negative ratings watch but you hire these experts for that very purpose that it is fundamentally premature to start questioning plausibility of well would it have gone down or not quite frankly I think very much so that if I'm thinking of investing in a company and they come out and say yeah you know so I'm a CEO or I'm others a chief of the litigation department I engage in corrupt conduct yeah we kind of did it I guess we were wrong about denying it for so long but just go ahead and buy my company in any way because you know nothing bad is gonna happen in the future you could trust me now okay thank you interesting case the case will be submitted are there any other cases